IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  08-cv-01734-WYD-KLM

JASON DEWEY and
ALICIA DEWEY,

       Plaintiffs,

v.

DANIEL LAUER and
DANIEL LAUER & ASSOCIATES, LTD., a Colorado Corporation,

       Defendants.

---

## ORDER

---

THIS MATTER comes before the Court on Defendants' Motion to Dismiss First Amended and Supplemental Complaint [doc. #35], filed December 3, 2008, and Plaintiffs' "Motion to Stay This Case Pending Disposition of Parallel State Court Litigation" [doc. #65], filed July 23, 2009.  In the Motion to Dismiss, Defendants request dismissal of this case pursuant to Federal Rules of Civil Procedure 8(a)(2), 9(b), and 12(b)(6).  Plaintiffs responded to the Motion to Dismiss on December 30, 2008, and Defendants replied on January 12, 2009.  In the Motion to Stay, Plaintiffs request a stay of this case in light of a similar action pending in state court in Pitkin County, Colorado. Defendants responded to the Motion to Stay on August 4, 2009, and Plaintiffs replied on August 17, 2009.  In their response to the Motion to Stay, Defendants state that they have no opposition to a stay if the Court denies the pending Motion to Dismiss.  For the

reasons stated herein, I will deny the Motion to Dismiss, and I will grant the Motion to Stay in part and deny it in part.

## I. BACKGROUND

Plaintiffs Jason and Alicia Dewey filed their First Amended and Supplemental Complaint [doc. #28] on Number 17, 2008.  Therein, they allege RICO claims predicated upon mail fraud, wire fraud, and extortion against Defendants Daniel Lauer and Daniel Lauer and Associates, Ltd. [hereinafter "DLA"].  They also bring the supplemental state law claims of forfeiture and outrageous conduct.  Plaintiffs generally allege that Defendants have fraudulently over-billed and made other false representations to them and other customers in the course of carrying out construction jobs.

## II. ANALYSIS

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, ___ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In other words, "a plaintiff must 'nudge [][his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *The Ridge at Red Hawk, L.L.C. v.Schneider*,493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 547) (alterations in original); *see also Iqbal*, 129 S. Ct. at 1950-51. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

Drawing on these principles, the *Iqbal* Court held that courts can proceed using a two-pronged analysis. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "[T]he tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

## B. Alter Ego

As a preliminary matter, Defendants contend that Plaintiffs' RICO claim should be dismissed because of Plaintiffs' allegation that Defendant DLA is an alter-ego of Defendant Lauer.  In their complaint, Plaintiffs allege that Defendant Lauer used co-defendant DLA, "an alter-ego entity of himself," to carry out his "scheme or artifice to defraud."  (Compl. ¶ 56(A).)  Plaintiffs also allege that Defendant Lauer was "doing business as" DLA.  (Compl. ¶¶ 4(a), 5.)  The Supreme Court has held "that to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).

In their response to the Motion to Dismiss, Plaintiffs essentially concede Defendants' legal argument, and they argue merely that Defendants' denial that they are alter-egos contained in their answer to the complaint is "a conclusive judicial admission" that "establishes conclusively" that Defendants are not "one and the same person or legal personality."  (Resp. to Mot. to Dismiss 14.)  Plaintiffs argue, without citing authority in support, and in contravention of the existing authority with regard to

Rule 12(b)(6), that motions to dismiss are ruled upon base on all pleadings before the

court, not just the complaint.

What constrains me in dismissing the case on these grounds is that the

allegations that Defendants are alter-egos and that Defendant Lauer was merely doing

business as Defendant DLA are legal conclusions, which are not entitled to assumptions

of truth.  *See Iqbal,* 129 S. Ct. at 1950.  Thus, although accepting these allegations as

true would in fact weigh against Plaintiffs and would support dismissal of the RICO

claim, I find that I cannot dismiss the RICO claim on these grounds.  Accordingly, I

proceed to address the merits of Plaintiffs' RICO claim.

## C. RICO

The relevant portion of the Racketeer Influenced and Corrupt Organizations

(RICO) Act provides:

> It shall be unlawful for any person employed by or associated with any
> enterprise engaged in, or the activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or indirectly, in the conduct of
> such enterprise's affairs through a pattern of racketeering activity or
> collection of unlawful debt.

18 U.S.C. § 1962(c).[1]  "The elements of a civil RICO claim are (1) investment in, control

of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity."  *Tal*

*v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (citing 18 U.S.C. 1962(a)-(c)); *see also*

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  "'Racketeering activity' is

defined in 18 U.S.C. § 1961(1)(B) as any 'act which is indictable' under federal law and

---

[1] I agree with Defendants that although Plaintiffs have cited the other subsections of § 1962, subsection (c) is the only provision that conceivably applies to its RICO claim.

specifically includes mail fraud, wire fraud and racketeering.  These underlying acts are 'referred to as predicate acts, because they form the basis for liability under RICO.'" *Tal*, 453 F.3d at 1261 (quoting *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999)).  In their complaint, Plaintiffs allege the predicate acts of mail fraud, wire fraud, and extortion.  Defendants argue that Plaintiffs have not sufficiently alleged the predicate acts and that Plaintiffs have not sufficiently alleged the requisite pattern.

### 1. Racketeering Activity

Despite the rambling nature of Plaintiffs' complaint and their extensive unresponsiveness to Defendants' arguments, I find that Plaintiffs have sufficiently alleged RICO claims predicated upon mail fraud and wire fraud.  "To establish the predicate act of mail fraud, [a plaintiff] must allege (1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme."  *Tal*, 453 F.3d at 1263 (quotation omitted).  "The elements of wire fraud are very similar, but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud."  *Id.* (quotation omitted).

> The common thread among these crimes is the concept of "fraud." Actionable fraud consists of (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury.  Failure to adequately allege any one of the nine elements is fatal to the fraud claim.

*Id.* (internal quotation and alterations omitted).

The particularity requirement of Federal Rule of Civil Procedure 9(b) applies to claims of mail and wire fraud.  *Id.*  That rule provides specifically, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  "Thus, a complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Tal*, 453 F.3d at 1263 (quotation and alteration omitted).  "A plaintiff asserting fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme."  *Id.* (quotation omitted).

Rather than responding to Defendants' arguments that their factual allegations do not establish the elements of mail fraud and wire fraud, Plaintiffs go to great lengths to describe a number of irrelevant cases from other jurisdictions.  Nonetheless, I find that Plaintiffs' allegations do in fact satisfy the requirements for mail fraud and wire fraud.  Plaintiffs meet the first three elements of alleging material false representations by describing with specificity several instances of Defendants' false billing practices and overcharging.  (Compl. ¶ 43.)  Defendants' argument that these allegations "recite facts consistent with simple billing errors or legitimate billing disputes" (Mot. to Dismiss 5) asks me to engage in fact finding rather than to assume Plaintiff's factual allegations to be true, as I must.  The next two elements of fraud pertain to Defendants' state of mind, which the language of Rule 9(b) allows to be averred generally.  Plaintiffs have met this requirement by alleging that "Lauer evidenced a specific intent to defraud his victims."

-7-

(Compl. ¶ 56(C).)  Finally, Plaintiffs have alleged the final three elements of reliance, their right to rely on the representations, and injury, by stating in their complaint that they paid the amounts charged, only later to learn that the charges "were for multiples of [Lauer's] actual costs for labor . . . ."  (Compl. ¶ 56(E).)

Because Plaintiffs have alleged the nine elements of fraud, I find that they have satisfied the first element of mail and wire fraud by alleging a scheme or artifice to defraud or obtain money or property by false pretenses, representations, or promises. With respect to the second element, Plaintiffs have provided in their complaint multiple specific examples of how Defendants used both United States mail and interstate wire communications to communicate their false representations.  In several places in the complaint, Plaintiffs identify specific mailings and wire communications sent by Defendants to them as well as the other alleged victims of the racketeering scheme. (Compl. ¶¶ 5-8, 43, 47, 50.)  Plaintiffs go so far as to attach texts of e-mails as well as mailings and copies of envelopes as exhibits to the complaint.  Through these allegations, Plaintiffs identify the purpose of the communications as transmitting the false representations, thus demonstrating the purpose of these communications within the fraudulent scheme.  Accordingly, through these specific allegations and exhibits, Plaintiffs have met the requirements of Rule 9(b) by "set[ting] forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Tal*, 453 F.3d at 1263.

Finally, with respect to whether the wire communications are of an interstate nature, Plaintiffs allege that "[t]he nature of e-mail and interstate cellular phone

communications is such that all such communications are transmitted interstate, even when a place of origin and place of destination of a particular communication is entirely within one state." (Compl. ¶ 37.)  Plaintiffs briefly explain the technology that renders such communication interstate.  (Compl. ¶ 37.)  I find these allegations to be specific factual allegations entitled to the assumption of truth, and accordingly I find that Plaintiff has alleged interstate wire communications used in a scheme to defraud.  In conclusion, I find that Plaintiff has met the requirements of alleging mail and wire fraud as predicate RICO acts, pursuant to both Rule 12(b)(6) and the more stringent standard of Rule 9(b). In light of this finding, which will ultimately lead me to administratively close the case, I find that I do not need to address the merits of Plaintiffs' allegations of extortion at this time.

### 2. Pattern

I reject Defendants' other argument for dismissal of Plaintiffs' RICO claim because I find that Plaintiffs have sufficiently alleged a pattern of racketeering activity. "A 'pattern' of racketeering activity is defined as 'at least two acts of racketeering activity, . . . which occurred within ten years' of each other." *Tal*, 453 F.3d at 1267 (quoting 18 U.S.C. § 1961(5) (alteration in original)).  "However, . . . proof of two or more predicate acts [is] not sufficient to prove a pattern unless there is a relationship between the predicate acts and a threat of continuing activity." *Id.* at 1268 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  "Continuity of threat requires both proof of a series of predicates extending over a substantial period of time, as well as a

showing that the predicates are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise." *Id.* (quotation and alterations omitted).

Defendants argue, first, that Plaintiffs have not alleged a threat of continuing activity because the construction jobs referred to in the complaint are completed, and, second, that Plaintiffs have not alleged facts supporting a conclusion that other customers of Defendants are victims of mail and wire fraud.  In their complaint, Plaintiffs allege, "The pattern of unlawful use by Lauer of interstate email and interstate cellular telephone of U.S. mail communications has involved multiple victims (at least the Deweys, the Gortans, Nobuko Kang, Jennifer Hall and the City of Aspen) and is ongoing."  (Compl. ¶ 43(G).)  Plaintiffs further allege the numerous similarities with respect to Defendants' fraud on these victims' jobs, which involved the time frame of 2007 and 2008.  (Compl. ¶ 31.)  Plaintiffs support these allegations, as noted above, with allegations and evidence of specific communications, for example, five communications through United States mail to the Gortans ranging from October 18, 2007 to January 15, 2008 (Compl. ¶ 43(P)), and an e-mail communication to Jennifer Hall on October 24, 2007.  (Compl. ¶ 47(B).)  I thus find that Plaintiffs have sufficiently alleged a pattern of racketeering activity.  They have demonstrated a relationship between two or more predicate acts and a threat of continuity, by alleging that these acts extended over a substantial period of time and were Defendant's regular way of conducting its business.  In conclusion, I find that Plaintiffs have sufficiently pled their RICO claim, which I will not dismiss.

**D. SUPPLEMENTAL CLAIMS**

Defendants' argument for dismissal of Plaintiffs' forfeiture and outrageous conduct claims appears to be predicated on the dismissal of the RICO claim, as Defendants argue in a conclusory manner that I should decline to exercise supplemental jurisdiction over these claims.  Because I will not dismiss the RICO claim, I likewise will not dismiss the forfeiture and outrageous conduct claims.

**E. ADMINISTRATIVE CLOSURE**

In their response to Plaintiffs' Motion to Stay, Defendants state that they do not oppose a stay of the present case should the court deny its Motion to Dismiss.  For the foregoing reasons, I will deny the Motion to Dismiss.  However, rather than staying the case for the extensive period of time that the parties' action in state court may take, I will administratively close the case pursuant to D.C.COLO.LCivR 41.2. *See Quinn v. CGR*, 828 F.2d 1463, 1465 & n.2 (10th Cir. 1987) (construing administrative closure as the practical equivalent of a stay).  The case may be reopened for good cause shown, which shall include any further court proceedings the parties deem necessary after the resolution of the state case.

**F. CONCLUSION**

Based upon the foregoing, it is hereby

ORDERED that Defendants' Motion to Dismiss First Amended and Supplemental Complaint [doc. #35], filed December 3, 2008 is **DENIED**.  It is

FURTHER ORDERED that Plaintiffs' "Motion to Stay This Case Pending Disposition of Parallel State Court Litigation" [doc. #65], filed July 23, 2009 is

**GRANTED in part and DENIED in part**.  It is denied to the extent it seeks stay in the case but granted to the extent the Court has used the Motion to order an administrative closure.  In accordance therewith, it is

ORDERED that this case is **ADMINISTRATIVELY CLOSED** pursuant to D.C.COLO.LCivR 41.2, to be reopened for good cause shown.  It is

FURTHER ORDERED that the parties shall file a joint status report within thirty (30) days of the current trial date of September 7, 2010.  If the trial date changes, the parties shall notify the Court immediately.

Dated:  September 30, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge